Common Pleas Court of Tuscarawas County.

GEORGE SEDARIS ET AL., DOING BUSINESS AS SEDARIS BROS.
V. BELLE RILEY.*

Decided July 19, 1928.

Note—This case was submitted by agreement of counsel to Probate Judge J. H. Lamneck in the absence from the county of a Common Pleas Judge or a Judge of the Court of Appeals, under the provisions of Section 11878, General Code.

*Stafford & O'Donnell,* for plaintiff.
*Wilkin, Fernsell, Fisher & Limbach,* for defendant.

LAMNECK, J.

This is an action brought by Sedaris Bros. of Uhrichsville, Ohio, to enjoin one Belle Riley from occupying a certain store room in the city of Uhrichsville, Ohio, formerly occupied by a Mrs. Carpenter, to which they claim that they have the immediate right of possession. They allege in their petition that she claims the right of possession and is threatening to occupy and is starting to occupy said premises to their great and irreparable damage.

To their petition, the defendant has filed an answer and cross petition in which she sets up two defenses:

1. That she has taken possession of said premises.
2. That she has a right to take legal possession.

In the cross petition she asks for damages occassioned by the allowance of a temporary injunction.

The store room in question is owned by one Florence F. Fraleigh, a resident of Los Angeles, California. Both parties claim the right of possession by virtue of a lease. The plaintiffs' contention is, and it is undisputed, that they had written to Mrs. Fraleigh asking to rent the store room in question sometime before June 27, 1928; that on June 27, 1928, she offered the plaintiffs the room, by letter, for $30 per month, which offer they accepted by letter under date of July 1, 1928.

The defendant claims possession by virtue of a lease on said premises dated June 26, 1928, issued in the name of the owner by one Jim Staneart as her agent.

The plaintiffs contend that the said Jim Staneart had no authority to execute a lease of any kind for the owner, and that he was not an agent.

In his argument, the defendant's attorney contends in part that the court should not grant the relief asked, for the reason that the plaintiff has several adequate remedies at law. He also contends that equity will only take jurisdiction in trespass in cases when the plaintiff would be put to a multiplicity of suits or where there is a continuing nuisance of a public nature, or in cases of waste on the part of lessee.

The rule that equity will only take jurisdiction in cases where there is no adequate remedy at law does not apply where the remedy at law is not as practical and as efficient to the ends of justice and to its prompt administration as the remedy in equity. (See *Watson* v. *Sutherland,* 5 Wall., 78; also *Boyce, Exrs.,* v. *Grundy,* 3 Peters, 210, 215; also *Culver* v. *Rodgers,* 33 O. S., 545.)

This action is brought against one, who, under claim of right, is committing, and threatens to continue to commit permanent trespass upon property by her own acts and by persons employed by her, the possession of which is claimed by the plaintiffs; the claims of the two parties are such that strife and litigation are inevitable. It is conceded that the plaintiff has an adequate remedy at law; yet, it is quite clear to the court that that remedy is not as practical and efficient to the ends of justice as the remedy in equity. Furthermore, to raise this sort of a contention, it should have been done before trial, by demurrer or answer. By so doing, and if the contention of the defendant had been sustained at that time, the plaintiff would have been permitted to amend, and have their contention heard without being driven to another action. (See *Culver* v. *Rodgers,* 33 O. S., 542.)

It should also be noted that in the case of *Lembeck* v. *Nye,* 47 O. S., 336, the Supreme Court laid down this proposition:

"Where numerous acts are being committed, and their continuance threatened, under a claim of right, by one person on the land of another, which acts constitute trespass, and the injury resulting from each act is, or would be, trifling in amount as compared with the expense of prosecuting actions at law to recover damages therefor, the owner may resort, in the first instance, to a court of equity for appropriate relief."

This case then resolves itself into the question whether the defendant has a valid lease. If not, then the plaintiffs are entitled to the relief prayed for, for the reason that their lease would then be valid.

It appears from the testimony and exhibits that Jim Staneart had been acting as the agent for the owner of the premises in question for some time past, the exact nature

of his authority being unknown. It is clear that he collected rents, paid taxes, secured tenants, made repairs and did other minor things for the owner not only for the property in question but for other property which she owned. During the early part of 1928, it appears that one Mrs. Carpenter was occupying the store room in question and that she was doing something which was not agreeable either to the owner or to Mr. Staneart. Several letters passed back and forth between the owner and Mr. Staneart relative to Mrs. Carpenter and it was finally decided that her rent would be raised to $50 per month in the hope that she would vacate the premises. The raising of rent had its desired effect and Mrs. Carpenter made known her decision to vacate sometime prior to June 28, 1928, which was the date she vacated.

Under date of February 3, 1928, the owner wrote to Mr. Staneart a letter which, among other things, contained the following:

"You are my agent and so you have to do business for me the right way by protecting me * * *. Do what you see fit."

Under date of March 26, 1928, Mr. Staneart received another letter containing a paragraph reading as follows:

"You do as you please about the Carpenter room, Jim. You are there and know what is going on and know what is right. I am depending on you to look after my property from now on and I know you will do the best as always."

When it appeared that it might be necessary to bring some legal action against Mrs. Carpenter, the owner evidently told Mr. Staneart that she expected to secure the services of Mr. Henry Bowers, an attorney-at-law, to which Mr. Staneart apparently excepted for under date of April 25, 1928, she wrote a letter to Mr. Staneart including the following:

"I have always been satisfied with your services as my agent, but you are not an attorney, and there are times when one is necessary * * *. I wish you to be my agent * * * and we have no trouble in any way."

Under date of June 11, 1928, she again wrote a letter to Mr. Staneart in which she stated:

"Please try to rent my rooms as soon as possible. I will be very thankful to you."

Apparently Mr. Staneart wrote to Mrs. Fraleigh that he had rented the room to the defendant, for under date of June 18, 1928, she wrote as follows:

"I did want $30 for that room, Jim, but I guess it is alright for $25, but Mrs. Riley will have to take care of repairs, etc. Try to get $50 for barber shop room, not less than $45. Now I want you to do your best with my property to keep it rented and see if I can't have less worry about it."

Under date of June 13, 1928, Mr. Staneart gave a receipt to Mrs. Belle Riley reading as follows:

"Received of Mrs. Belle Riley this 13th day of June, Twenty-five Dollars $25 to be applied as rent on store room located at 221 N. Water street as soon as it is vacated by the present occupant, and said amount of money shall be in full for the period of one month from the day room is vacated by Mrs. Carpenter.

James M. Staneart,<br>Agent for Miss Florence Fraleigh."

Pursuant to this receipt, Mr. Staneart as agent for Florence F. Fraleigh entered into a written lease with Belle Riley on June 26, 1928, for said premises for the term of two years, commencing on the 27th day of June, 1928, for $300 rent per year, to be paid in monthly installments of $25 in advance, payable on the 27th day of each month. A provision is also contained in said lease that Mrs. Riley should have the privilege of renewal for one year.

Under date of June 25, 1928, Mrs. Fraleigh wrote a letter to Mr. Staneart which was received by him after June 28, 1928, in which she returned $25 rent Mrs. Riley had paid on June 13, 1928, and in which she stated that she wanted the plaintiffs to have the room because they would pay $5 more rent per month and because they were her present tenants. She also stated,

"When you wrote me, you did not tell me Sedaris Bros. had offered you $30 a month."

Other exhibits are in the record of later date than June 28, 1928, wherein Mrs. Fraleigh alleges that Mr. Staneart exceeded his authority.

It also appears from the testimony that Mrs. Riley had employed a painter and other persons to make some alterations in said room, and that they were engaged in said work when this action was brought.

In nearly all of the owner's letters to Mr. Staneart, the room in question was under discussion, and when it was vacated, she told him to rent it. There is nothing in the record to show that this authority to rent was limited in any way. It is a principle of law that every agent in the execution of his express authority has implied authority to do whatever is reasonably necessary to its effective execution, unless the principal has indicated a contrary intention.

Furthermore, if Mr. Staneart was acting beyond the scope of his actual authority when he gave the receipt for $25 on June 13, 1928, Mrs. Fraleigh would be liable on the contract if she ratified the same. She apparently did this when she wrote to Staneart under date of June 18, 1928, when she stated:

"I did want $30 for that room, Jim, but I guess it is alright for $25, but Mrs. Riley will have to take care of repairs."

It is also a principle of law that when an agent acts within the scope of his apparent authority, unless the third person has notice that the agent is exceeding his actual authority, the principal is liable.

Mrs. Riley had a right to assume from all the facts and circumstances disclosed in this case that Mr. Staneart was acting in the scope of his apparent authority, even if the owner had not ratified the leasing of the room to her.

The temporary injunction issued herein is vacated and dissolved and the action is dismissed at the plaintiffs' costs. It is also ordered that the defendant receive from the plaintiffs damages in the amount of $100.

Exceptions will be noted.